UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| GRANT E. BENTRUD, | ) |
| Plaintiff, | ) |
| vs. | ) CAUSE NO. 1:12-cv-1340-WTL-DML |
| BOWMAN, HEINTZ, BOSCIA & VICIAN, P.C., | ) |
| Defendant. | ) |

## ENTRY ON CROSS MOTIONS FOR SUMMARY JUDGMENT

This cause is before the Court on the parties' cross motions for summary judgment (dkt. nos. 45 and 50).[1] These motions are fully briefed, and the Court, being duly advised, **GRANTS** the Defendant's motion (dkt. no. 45) and **DENIES** the Plaintiff's motion (dkt. no. 50) for the following reasons.

### I. STANDARD

Federal Rule of Civil Procedure 56(a) provides that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In ruling on a motion for summary judgment, the admissible evidence presented by the non-moving party must be believed and all reasonable inferences must be drawn in the non-movant's favor. *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 490 (7th Cir. 2007); *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) ("We view the record in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor."). However, "[a] party who bears the burden of proof on a particular issue

---
[1] Before filing for summary judgment, the Defendant filed a motion for judgment on the pleadings (dkt. no. 38) which, in light of this ruling, is **DENIED AS MOOT**.

may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Id.* Finally, the non-moving party bears the burden of specifically identifying the relevant evidence of record, and "the court is not required to scour the record in search of evidence to defeat a motion for summary judgment." *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001).

The fact that the parties have filed cross-motions for summary judgment does not alter the standard set forth in Federal Rule of Civil Procedure 56. When evaluating each side's motion, the Court simply "construe[s] all inferences in favor of the party against whom the motion under consideration is made." *Metro Life. Ins. Co. v. Johnson*, 297 F.3d 558, 561-62 (7th Cir. 2002) (quoting *Hendricks-Robinson v. Excel Corp.*, 154 F.3d 685, 692 (7th Cir. 1998)).

## II. BACKGROUND

This cause arises out of a $10,955.20 credit card debt the Plaintiff, Grant Bentrud, owes to Capital One Bank (USA), N.A. ("Capital One"). The Defendant, Bowman, Heintz, Boscia & Vician, P.C. ("Bowman") filed suit against Bentrud on behalf of its client, Capital One, on January 6, 2012, in Hendricks County Superior Court in an attempt to collect the lump sum.

The present lawsuit is brought pursuant to the Fair Debt Collection Practices Act ("FDCPA") and alleges two wrongs committed by Bowman. The first involves the applicable interest rate on Bentrud's debt. In the Complaint filed in Hendricks County, Bowman sought "$10,955.20 plus unpaid fees and/or accrued finance charges of $386.76, a finance charge at the rate of 10.65% per annum from October 8, 2011[.]" Dkt. No. 59-5. However, on Bentrud's May 16, 2011, statement, the Annual Percentage Rate ("APR") for "purchases" was 13.9%. Dkt. No. 52-1, Exh. 1. The letter "D" appears next to the APR, meaning that the 13.9% rate was calculated using the "Monthly Prime [rate] + [a] margin previously disclosed to [Bentrud]." *Id.*

As Bentrud alleges in his Amended Complaint "[t]he prime rate has been the same from December 16, 2008 to the present." Amd. Compl. ¶ 10. Therefore, he argues that the 10.65% interest rate alleged by Bowman in its Complaint and the 13.9% APR reflected in his Capital One statement cannot both be correct. Thus he infers: 1) if the 10.65% rate is correct, Bowman is attempting to collect an amount that Bentrud does not owe, in violation of 15 U.S.C. § 1692f; or 2) if the 13.9% rate is correct, Bowman has misrepresented the applicable interest rate, in violation of 15 U.S.C. § 1692e.

Next, Bentrud argues that Bowman violated the FDCPA when it filed its second summary judgment motion in the state court action. On March 12, 2013, after hearing argument on Bowman's first summary judgment motion, the state court denied Bowman's motion and ordered the matter "stayed pending arbitration pursuant to the parties' agreement." Dkt. No. 59-6. The relevant paragraph of the arbitration agreement is as follows: "If you or we elect arbitration of a claim, neither you nor we will have the right to pursue that claim in court or before a judge or jury or to participate in a class action or any other collective or representative proceeding." Amd. Compl. ¶ 12. The court gave Bentrud thirty days to initiate arbitration. On March 28, 2013, the court clarified its order, giving Bentrud up and until April 11, 2013, to initiate arbitration. Bentrud then attempted to initiate arbitration with the American Arbitration Association ("AAA"), but was rejected; AAA noted that the rejection was because "Capital One has not previously complied with our request to adhere to our policy regarding consumer claims." Dkt. No. 59-8.

On May 16, 2013, therefore, Bowman filed its second summary judgment motion. In response, Bentrud filed a motion asking the state court to either dismiss the matter pursuant to the arbitration agreement, or to continue the stay so that he could initiate arbitration with JAMS,

a different arbitration association. The state court ordered the matter stayed up and until July 31, 2013. Bentrud did in fact initiate arbitration with JAMS and the matter is currently being arbitrated. It is this second summary judgment motion on which Bentrud bases his FDCPA claim.

### III. DISCUSSION

#### A. Summary Judgment Motion

Bentrud alleges that Bowman's filing of a second summary judgment motion violated 15 U.S.C. §§ 1692d and 1692f.[2] These provisions state the following: "A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt" and "[a] debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt." Because the parties' arbitration agreement stated that if either side elected arbitration, litigation of the claim was not an option, Bentrud argues that Bowman violated the FDCPA when it filed its second motion for summary judgment. The Court, however, agrees with Bowman that Bentrud misunderstands the nature of the state court litigation.

The state court's March 28, 2013, order stated the following: 1) "[T]his matter is stayed up to and including April 11, 2013 to provide [Bentrud] opportunity to initiate arbitration"; 2) "[Bentrud] SHALL file a copy of any/all arbitration notices with this Court evidencing that arbitration proceedings have been initiated"; and 3) "That should [Bentrud] fail to comply with

---

[2] Bentrud initially alleged that Bowman also violated 15 U.S.C. § 1692e which prohibits a debt collector from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt." In his Reply, Bentrud essentially concedes that since he was represented by counsel at the time Bowman filed the second summary judgment motion, he could not have been "mislead." *See* Pl.'s Reply at 2 ("Bowman Heintz may have a point as to § 1692e . . .").

4

Rhetorical Paragraphs 1-2 above, the stay will be AUTOMATICALLY DISSOLVED, and the parties' shall be permitted to resume litigation." Dkt. No. 46-7.

It is true that Bentrud did attempt initiation with AAA, but his request was denied; for whatever reason, Bentrud did not then timely seek to initiate arbitration with JAMS or timely request an extension of time from the state court for initiation. Essentially, Bentrud argues that despite his failure to timely initiate arbitration, because he "elected" to arbitrate, Bowman no longer was permitted to litigate the matter. The Court disagrees. If this were true, a party could theoretically elect arbitration and forever fail to initiate it, leaving the other side without recourse. Clearly that is not the case—because Bentrud did not abide by the state court's order, the stay was dissolved and Bowman then filed its second summary judgment motion. The Court does not find its filing to be unfair and does not believe its purpose was to harass, oppress, or abuse Bentrud. Bowman simply sought legal recourse for a debt that Bentrud himself does not dispute that he owes. Summary judgment is hereby **GRANTED** to Bowman on this FDCPA claim.

### B. Interest Rate

Bentrud's second FDCPA violation allegation is with respect to the applicable interest rate on his account. As explained above, there are two rates at issue: 1) the 13.9% interest rate reflected in Bentrud's May 16, 2011, statement; and 2) the 10.65% rate reflected in the state court Complaint. Attached to the Complaint was Stephen Hardy's affidavit which stated the following:

> The books and records of Capital One show that at the time [Bentrud's] account . . . charged off in the ordinary course of business, the just and true sum of $10,955.20 remained due and owing as of 05/17/2011 with interest accruing from said date to the date hereof at an annual percentage rate in accordance with the Customer Agreement, currently 10.65%.

5

Dkt. No. 59-4. Bentrud argues that both rates cannot be correct.

Bentrud states that "it is eminently reasonable to conclude that 10.65% is and has been the interest rate on Bentrud's account since December 16, 2008." Pl.'s Response at 7. The Court disagrees. The May 16, 2011, statement[3] clearly notes that the APR was 13.9%; the "D" notation also appears next to that figure, indicating that the rate was calculated by adding the prime rate plus the previously-disclosed rate. Thus, the evidence of record does not support Bentrud's allegation that his interest rate has always been 10.65% or that Bowman is attempting to collect an excessive amount of debt.

More to the point, however, is the fact that Bowman never stated that 10.65% was the interest rate used pre charge-off, i.e. prior to May 17, 2011. The state court Complaint stated that the interest rate was "10.65% per annum *from October 8, 2011*," a date that is clearly post charge-off. While the Court is not aware of why Capital One may have changed Bentrud's interest rate, the fact is that it did, and this is reflected in his August 15, 2011, statement. Under the heading "Interest Charge Calculation," it is noted that Bentrud's account is interest bearing at an APR of 10.65%—absent is the "D" notation, indicating that this rate was calculated in a different manner from his previous rate. This is entirely consistent with Hardy's affidavit which states that Bentrud owed "$10,955.20 as of May 17, 2011 (the charge-off or write-off date) *with interest accruing from said date to the date hereof at an annual percentage rate in accordance with the Customer Agreement, currently 10.65%*." Dkt. No. 59-4. Thus, there was no misrepresentation in alleging that 10.65% was the interest rate on Bentrud's account as of May 17, 2011—the evidence Bentrud submitted supports this. Summary judgment is therefore

---

[3] Bentrud did not supply the Court with any credit card statements prior to May 16, 2011. Accepting as true Bentrud's argument that the prime rate has remained the same since December 16, 2008, the Court presumes that 13.9% has been the APR since that date.

**GRANTED** in favor of Bowman on this claim. Accordingly, the Court **DENIES** Bentrud's motion for Rule 56(f) Notice (dkt. no. 61), as the Court need not address whether Bowman is entitled to the bona fide error defense.

## IV. <u>CONCLUSION</u>

For the foregoing reasons, the Defendant's motion for summary judgment (dkt. no. 45) is **GRANTED**, and the Plaintiff's motion for summary judgment (dkt. no. 50) is **DENIED**.

SO ORDERED: 05/27/2014

*[signature: William T. Lawrence]*

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic notification